UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALEXANDRO A. SCHEKER and
PEOPLE DRIVEN TECHNOLOGY,
INC.,

        Plaintiffs,

v.

PRESIDIO, INC.; PRESIDIO
NETWORKED SOLUTIONS LLC; and
PRESIDIO NETWORKED
SOLUTIONS GROUP, LLC;

        Defendants.

Case No:

Hon.

D. Andrew Portinga (P55804)
James R. Peterson (P43102)
Jacob L. Carlton (P84859)
MILLER JOHNSON
Attorneys for Plaintiffs
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1700
portingaa@millerjohnson.com
petersonj@millerjohnson.com
carltonj@millerjohnson.com

## **COMPLAINT**

Plaintiffs, Alexandro A. Scheker and People Driven Technology, Inc. ("PDT"), state as follows for their complaint:

## NATURE OF ACTION

This is an action for declaratory judgment. Plaintiffs seek a declaratory judgment determining the applicability of a confidentiality/non-solicitation agreement between Alex Scheker and his former employer, Netech Corporation, to his current employment with PDT.

## PARTIES

1. PDT is a Michigan corporation with its principal place of business located in Byron Center, Michigan.

2. Alexandro A. Scheker is an individual who resides in Zionsville, Indiana.

3. Presidio, Inc. is a Delaware corporation with its principal place of business in New York, New York.

4. Presidio Networked Solutions, LLC ("PNS") is a Florida limited liability company and an indirectly wholly-owned subsidiary of Presidio, Inc. PNS's principal place of business is located in New York, New York. Upon information and belief, none of PNS's members are citizens of Indiana or Michigan.

5. Presidio Networked Solutions Group, LLC ("PNSG") is a Delaware limited liability company, a wholly-owned subsidiary of PNS, and an indirectly wholly owned subsidiary of Presidio, Inc. Upon information and belief, none of PNSG's members are citizens of Indiana or Michigan.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and the parties are citizens of different States.

7. This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201-02 and Federal Rule of Civil Procedure 57.

8. Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

9. Per LCivR 83.11(b)(7), this case is a companion case to another case pending in this district, *PDT and Sutherland v. Presidio, Inc. et al.*, Case No. 4:22-cv-10098-SDK-KGA.

## GENERAL ALLEGATIONS

10. Plaintiffs incorporate by reference all preceding paragraphs.

11. On January 25, 2012, Mr. Scheker signed a Confidentiality/Non-Solicitation Agreement (the "Agreement") with his then-employer, Netech Corporation. A copy of the Agreement is attached as **Exhibit A**.

12. The Agreement states, in part:

> 1. **Confidentiality**: I acknowledge that Netech does and will own and develop proprietary information about its business which derives value by not being generally known to Netech's competitors. Such information (which shall be referred to as "Proprietary Information") includes, among other things, information about Netech's trade secrets, business methods, processes, assets, profitability, services, purchasing, sales, marketing, costs, contracts, bids, licenses, strategic and financial plans, financial data, pricing and other aspects of Netech and its business which are not generally known by the public and/or which provide Netech with a competitive advantage. I shall at all times (both during my employment with Netech and thereafter) keep all Proprietary Information in confidence and will not directly or indirectly use or disclose any Proprietary Information or anything relating to it without written consent from an officer of Netech, except as may be necessary in ordinary course of performing my duties for Netech.

13. The Agreement defines "Proprietary Information" to be Netech's Proprietary Information, and not that of any other entity.

14. The Agreement also provides, in part:

> 3. **Non-Solicitation of Other Employees**: During the course of my employment with Netech and for 12 months thereafter, I will not encourage, solicit, induce, or attempt to encourage, solicit or induce any other employee, agent or representative of Netech to leave his/her employment with Netech or devote less than full time efforts to Netech's business for any reason, and I will not hire or attempt to hire, for any position with any other business, any person who is an employee, agent or representative of Netech at such time or who has been an employee, agent or representative of Netech at any time within the preceding 90 days.

15. The Agreement prohibits solicitation of other employees of Netech, and not any other entity. Further, the twelve-month non-solicitation period begins to run when Mr. Scheker separates from employment with Netech.

16. Finally, the Agreement, provides, in part:

> 5. **Miscellaneous Provisions**: This Agreement shall be governed by, and construed and enforced in all respects, in accordance with the laws of each state. Further, the rights and obligations of Netech under this Agreement shall insure to the benefit and be binding upon Netech's successors and assigns. Finally, if a court of competent jurisdiction determines that any one or more of the provisions of this Agreement is invalid, illegal or unenforceable in any respect, such determination shall not affect the validity, legality or enforceability of any other provision of this Agreement.

17. Assuming that the Agreement is assignable as a matter of law, an assignment does not change the scope of the rights or obligations under the assignment. It just gives the assignee the assignor's rights under the agreement.

18. Netech was an IT services and solutions integrator and provider. Presidio[1] is also an IT solutions provider.

19. On December 31, 2015, Netech agreed to sell its assets to Presidio Infrastructure Solutions, LLC ("PIS"), a subsidiary of Presidio, Inc. This was an asset sale, not a stock sale. After the asset sale, Netech continued to exist as a non-operating entity.

20. On February 1, 2016, PIS closed on the purchase of Netech's assets.

21. With the close of the asset purchase, PIS and Netech entered into an Assignment and Assumption Agreement, dated February 1, 2016 (the "Assignment Agreement"), which purported to assign certain contracts. On February 1, 2016, the Assignment Agreement assigned Netech's rights in the Transferred Assets to PIS. **(Exhibit B)**.

22. Mr. Scheker's Agreement was one of the Transferred Assets.

23. The Assignment Agreement prohibits further assignment without prior written consent of the parties, except that Presidio Holdings, Inc., the Parent of PIS, is entitled to exercise rights under the Assignment Agreement.

---

[1] Presidio Inc, PNS, and PNSG are collectively referred to as "Presidio."

24. PIS merged into Presidio Networked Solutions Group, LLC ("PNSG"). PNSG is a separate entity from PNS and Presidio, Inc.

25. Upon information and belief, Mr. Scheker worked for Presidio Networked Solutions, LLC ("PNS"), not PNSG. PNS has no rights under the Agreement. Nor does Presidio, Inc.

26. At most, PNSG holds any rights under the Agreement.

27. Any rights that were validly assigned to PNSG are limited to the rights that were granted in the Agreement.

28. Mr. Scheker's employment with Netech ended on February 1, 2016. On that date, Mr. Scheker became employed by PNS, which was not the assignee of the Agreement.

29. Mr. Scheker worked for PNS until Friday, March 25, 2022, when he resigned.

30. Mr. Scheker began working for PDT on Monday, March 28, 2022.

31. In a March 22, 2022 email, Presidio's Senior HR Business partner asserted that Mr. Scheker's Agreement with Netech applied to his employment with PNS. (**Exhibit C**).

32. Mr. Scheker never signed a confidentiality or non-solicitation agreement with PNS, Presidio Inc., or PNSG.

## COUNT I - DECLARATORY JUDGMENT

## (The Non-Solicitation Period in Mr. Scheker's Agreement Expired in 2017)

33. Plaintiffs incorporate by reference all preceding paragraphs.

34. Under the Agreement, Mr. Scheker's non-solicitation obligations exist "[d]uring the course of [his] employment with Netech and for 12 months thereafter."

35. Mr. Scheker's employment with Netech ended on February 1, 2016.

36. On February 1, 2016, he began working for PNS.

37. Therefore, the twelve-month non-solicitation period began to run on February 1, 2016, and it expired on February 1, 2017.

38. Even if Mr. Scheker's Agreement was assigned to PIS, the assignment does not change the scope of Mr. Scheker's obligations; rather, it only changes who can enforce the obligations.

39. Mr. Scheker never agreed to a non-solicitation agreement with anyone other than Netech.

40. Further, Mr. Scheker never worked for PIS, Netech's assignee. Instead, he worked for PNS. As of February 1, 2016, Mr. Scheker was not working for either Netech or Netech's assignee.

41. Thus, any assignment of the Agreement to PIS would not change the fact that his non-solicitation period began on February 1, 2016 and ended on February 1, 2017.

42. The parties dispute whether the Employment Agreement contains an enforceable non-solicitation provision. In an email dated March, 22, 2022, Presidio's Senior HR Business Partner incorrectly asserted that, under the Agreement, Mr. Scheker, "cannot solicit the Company's employees or interfere with the Company's employment relationships."

43. The facts and circumstances set forth above in this Complaint present an actual controversy regarding the rights and legal relations of the parties.

44. The rights of the parties can only be determined by a declaratory judgment.

45. Based on the foregoing, there is an actual controversy between the parties, and this Court may declare the legal rights and obligations of the parties.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants and award Plaintiffs the following relief:

    a. A declaratory judgment that the non-solicitation provisions contained within Agreement have expired.

    b. Costs and expenses of this action, including reasonably attorneys' fees; and

    c. Any further relief that the Court deems appropriate.

## COUNT II - DECLARATORY JUDGMENT

## (The Confidentiality Provisions in the Agreement Only Apply to Netech's Information)

46. Plaintiffs incorporate by reference all preceding paragraphs.

47. The confidentiality provisions of the Agreement states that "**Netech** does and will own and develop proprietary information about its business which derives value by not being generally known to **Netech's** competitors." **Exhibit A** (emphasis added).

48. The confidentiality provisions of the Agreement further state: "Such information (which shall be referred to as "Proprietary Information") includes, among other things, information about **Netech's** trade secrets, business methods, processes, assets, profitability, services, purchasing, sales, marketing, costs, contracts, bids, licenses, strategic and financial plans, financial data, pricing and other aspects of **Netech and its business** which are not generally known by the public and/or which provide **Netech** with a competitive advantage." **Exhibit A** (emphasis added).

49. The confidentiality provisions in the Agreement do not apply to any entity other than Netech.

50. While PIS bought the assets of Netech, it did not buy the stock, and Netech continued to exist as a non-operating entity after the asset purchase.

51. All of Netech's confidential information is at least six years old.

52. While the Agreement states that "the rights and obligations of Netech under this Agreement shall insure [sic] to benefit and be binding upon Netech's successors and assigns," an assignment does not change the scope of the agreement; rather it just changes who may enforce the agreement.

53. That is, PIS, Netech's assignee, has the benefit of being able to protect **Netech's** confidential information.

54. But the agreement does not apply to any other entity, including PNS, PNSG, or Presidio Inc.

55. Mr. Scheker never agreed to a confidentiality agreement with PNS, PNSG, or Presidio Inc.

56. The parties dispute the scope of the Agreement. In an email dated March, 22, 2022, Presidio's Senior HR Business Partner incorrectly asserted that, under the Agreement, Mr. Scheker has "an obligation to keep the Company's trade secrets and other private business information confidential at all times."

57. The facts and circumstances set forth above in this Complaint present an actual controversy regarding the rights and legal relations of the parties.

58. The rights of the parties can only be determined by a declaratory judgment.

59. Based on the foregoing, there is an actual controversy between the parties, and this Court may declare the legal rights and obligations of the parties.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in its favor and against Defendants and award Plaintiff the following relief:

 a. A declaratory judgment that the confidentiality provisions in the Agreement only apply to Netech's Proprietary Information, as defined in the Agreement.

 b. Costs and expenses of this action, including reasonably attorneys' fees; and

 c. Any further relief that the Court deems appropriate.

    MILLER JOHNSON
    Attorneys for Plaintiffs

Dated:  March 29, 2022  By   /s/ D. Andrew Portinga
    D. Andrew Portinga (P55804)
    James R. Peterson (P43102)
    Jacob L. Carlton (P84859)
    Business Address:
     45 Ottawa Avenue SW, Suite 1100
     PO Box 306
     Grand Rapids, Michigan  49501-0306
    Telephone:  (616) 831-1700
     portingaa@millerjohnson.com
     petersonj@millerjohnson.com
     carltonj@millerjohnson.com